All right, we're back from a brief break. We're going to begin with the third case. This is Appeal 17-2903, Rogers v. Kemper. Mr. Raiola, we're going to begin with you. Thank you, Your Honor, and may it please the Court, my name is Stephen Raiola. I'm a counsel with Kibler, Fowler & Cave, and I represent the appellant, Tony Rogers. I'd like to reserve three minutes for rebuttal, please. As set forth in our briefs, the District Court's Petition should be reversed and remanded for three reasons. The first is that the Wisconsin Court of Appeals unreasonably applied Strickland. The second is that the Wisconsin Court of Appeals unreasonably applied Ritchie. And the third is that the Wisconsin Court of Appeals acted contrary to Ritchie. Starting first with Strickland, the Wisconsin Court of Appeals found both deficient performance and prejudice lacking, and counsel's failure to try to obtain the medical records of the only eyewitness that testified at Rogers' trial. But as set forth in Rogers' briefing, both holdings are an unreasonable application of federal law. In a he said, she said case with no physical evidence, in which the government conceded that its entire case rested on the credibility of a single witness, there is simply no excuse for failing to follow up on reports that that single witness suffered from schizophrenia, a serious mental health disorder that courts have recognized for decades is highly probative of witness credibility. Mr. Aiola, your Strickland claim has two prongs to it. One is a failure to investigate, and one is a failure to have the court do an in-camera review of the documents. Is that fair? I think we have one Strickland claim, Your Honor, and it's the failure to investigate, failure to try to obtain the records, and there's an overlay. Through an in-camera review, because your failure to investigate aspect does not seem like something that you have raised with the state court. That seems like a different assertion than failure to make a Schiff or Green motion and seek in-camera review. Well, I think at the outset, the failure to file a Schiff or Green motion is a failure to investigate claim. There's not a constitutional right to have counsel go and file a motion. There is a constitutional right to have counsel investigate impeaching evidence and evidence that could be used to challenge the witness's credibility. In this case, that is teed up through a Schiff or Green motion for an in-camera review of the victim's medical records. So I think the underlying Schiff or Green failure to file that motion is a failure to investigate claim. But then, if you take it to the next level of what was specifically presented in the trial court, what was presented is a failure to obtain the medical records and a failure to try to obtain the medical records. And Mr. Rogers' contention was that there is ample evidence, and we'll cover this when we get to Richie, that would support that an in-camera review should have occurred on this record. But counsel, for whatever reason, decided that they weren't going to even try to pursue this motion, file it in the first instance, supply a foundation through which that motion could be successful. So I think that Rogers' claim in the state court that complains about the failure to obtain, but also the failure to try, embraces a failure to investigate claim that is broader than the mere failure to file the motion itself. An example that I could throw out is I certainly think if counsel had filed a motion but provided no factual basis for that motion, we'd have the same exact ineffective assistance of claim. Failure to file is a little bit broader than just mere filing something. It's trying to do something. In this case, I think the record contains a number of things that counsel could have done, investigating-wise, to substantiate the basis for the motion. Because Richie is referenced in Schifra a number of times, are there really distinctions between these two claims, the Schifra Green and the Richie? Between the Schifra Green and the Richie? And the Richie, yeah. I think this court has held on four different occasions that Schifra Green is an application of Richie, so it's fundamentally a Richie claim, which is why I think the state's argument that this is a question of state law has been rejected by this court on four separate occasions. But I think this court has consistently said that Schifra Green is an application of Richie, it's not contrary to. Now I think in our specific case, and obviously this is one of our arguments that you have language in the Wisconsin Court of Appeals decision that indicates that it did act contrary to Richie in this case when it faulted Rogers for failing to point to anything in the victim's medical records that indicated a propensity to apply. And the last time that this court looked at this issue in Mosley, it said we're not going to find that there's any contrary to clearly established federal law here because the Wisconsin Court of Appeals is not requiring anyone to go point to anything in the underlying medical records. But in this case, we actually do have statements from the Wisconsin Court of Appeals that said that what you supplied, and what he supplied in this case is the victim's hospitalization at a psychiatric facility, a letter in which the victim indicated that she was hearing voices and contemplating murder, and if you want to look at the contents of the letter, the victim read it at trial on pages 200 to 201 of the appendix, and I won't go through all the specifics, but if you read it, it is not reflective of somebody that's of sound mind. It goes on a number of subjects. I'm tired of having... Why wasn't it sufficient that they were allowed to really extensively cross-examine her about that letter and the statements in the letter? That would go to prejudice. I would disagree, Your Honor, that there was an extensive cross-examination. If you look at the pretrial transcripts, the trial judge made it clear. You may not ask about her hospitalization. You may not ask about what sort of treatment that she received. You may not ask about what her diagnosis is. What counsel was able to do was to go in and say, the letter that the state has admitted said that you were hearing voices. What do you mean by hearing voices? I mean my conscience blaming me for my father choosing to sexually assault me. And then there was nothing else that counsel could do with that. That is a fundamentally different trial than a trial in which there was a schizophrenia diagnosis. At that point, counsel not only could have put that evidence in, he could have potentially impeached the witness for trying to dismiss the voices she was referring to in her letter as just her conscience blaming her when the truth was that she was hearing voices. So I don't think that that cross-examination that was highly limited to just specifically what did you mean by hearing voices was a substitute for the mental health records here. Is it correct that the prosecutor here actually invited a Schiffer-Green motion? It is, Your Honor, and I think that underscores the deficient performance here. Counsel came in and the government said, we're moving to exclude any discussion of the victim's diagnosis or mental health. We don't have any proof of what's in the records. We haven't looked at them, but you have to lay your foundation. The way you lay the foundation is Schiffer-Green. The attorney then had two weeks, I think there were two weeks before that hearing and the next hearing because the trial judge punted on issuing a ruling in which they could have went and filed the Schiffer-Green motion. Instead, consciously went into court still trying to put on this mental health defense without filing the motion that the prosecution invited. And I think that underscores both that this wasn't a strategic decision. The attorney wanted to raise a defense that raised that this could have been a manifestation of mental illness, but had an invitation from the other side on how to do it and just didn't file it. A point that I was thinking about as I was preparing for argument today that I think is significant here is on four separate occasions, this court has looked at the failure to file a Schiffer-Green motion, but each of those cases, the attorney filed one. The attorney in this case didn't even file one. And I think where you get this overlap with Ritchie and Strickland is the district court and the Wisconsin Court of Appeals analysis is you didn't make the required showing. But I don't think anyone can dispute, and I'd be curious if Wisconsin disputes this, that there was a motion here that at a minimum had a chance of prevailing. You had a letter in which the victim said that she was hearing voices. You had a hospitalization in a psychiatric facility. And counsel's investigator said, I spoke to the victim and she had schizophrenia. If that's not a plausible showing that the records contain material evidence, I don't know what is. But even if it only had a 50% chance of prevailing, why didn't the attorney try and file that motion? In the other four decisions this court has issued on Schiffer-Green, it has taken much weaker evidentiary showings and said, maybe it would have been better to grant the in-camera review here, but it's not unreasonable application of clearly established federal law. Would it have been an unreasonable application of clearly established law to say he was entitled to an in-camera review of the victim's medical records? I don't think it would, and I don't think the state would contest that that would be a reasonable holding. And the counsel inexplicably, for no apparent reason, didn't file that motion, which meant he was doomed on arrival on this issue. Doesn't it matter somewhat about whether or not that motion would have been successful? It does matter to the prejudice prong, Your Honor. But what I guess I'm saying is, there is this threshold prejudice question of, if you have a motion and counsel, you think there's a 50-50 chance of prevailing, and you choose not to file it, you're going to lose 100% of the time. And isn't there prejudice in that losing of the 50% chance at the outset? But going to the actual showing itself, plausible showing that the records contain material evidence, and this brings me to my Ritchie argument, there is the investigator, there's ample evidence here, there's the testimony of a sworn officer of the court, bound by a duty of candor to the tribunal, saying to the district court judge, or the state court judge, my investigator spoke to the victim, she said she had schizophrenia. There is then corroborating evidence. The victim was institutionalized in a psychiatric facility around the time that she wrote a letter, and the letter refers to hearing voices. We cited in our briefs two cases from the Tenth Circuit and the Northern District of Oklahoma, it's the Browning case, in which the Tenth Circuit and the Northern District of Oklahoma found an unreasonable application of federal law, and the state court's failure to find that a schizophrenia-like diagnosis is material and favorable to the accused within Ritchie. And our position on this underlying evidentiary showing is that there was more than enough here to establish that it was an unreasonable application of federal law to find that he was not entitled to an in-camera review. Schizophrenia diagnosis is material, it's favorable to the accused, it can be used to impeach, it results in a fundamentally different trial. And was there a plausible showing that there is actually a mental health disorder here? There are statements that said the investigator was told by the victim herself that she had this disorder and there's corroborating evidence of a mental health disorder. Would you like to reserve the rest of your time? Yeah, I will reserve the rest of my time for rebuttal. Thank you. Thank you very much. Mr. Raiola, we'll move to Ms. Weiss. Good morning. May it please the court, I represent the respondent, Apelli Warden Kemper, in this case. This is not a direct appeal of a decision of a Ritchie case. This is a habeas petition that's based on an application of Strickland, that's based on an application of state law. But I would like to first say that the district court's decision was on the basis that Rogers offered no reason to believe that information in her mental health records would have undermined her credibility. That was the district court's view of disposing this as a not unreasonable application of Strickland and a not unreasonable application of Ritchie. The argument that was presented to the trial court in this matter, I can read to you, it's one paragraph in the argument to the Wisconsin Court of Appeals. Mr. Rogers asserts that he received ineffective assistance of counsel when his trial counsel failed to obtain the victim's mental health treatment records for use at trial. The victim's mental health was called into question when she drafted a letter to her mother indicating that she was hearing voices and needed mental health. With such an obvious question as to DAR's mental health, it cannot be said that the failure to obtain her mental health records was part of any recent deliberate strategy. The failure to obtain records was the result of a mistake. None of that addresses the standard that he must meet to satisfy access to mental health records, leaving aside for the moment that he only presented a state law, Schiffra-Green argument to the state courts. Are you saying that a failure to raise a state law defense can never support a Strickland claim? I'm sorry, can you repeat that question? Are you saying that an attorney's failure to We have a number of cases that say that it can't. I'm not offering it. I'm saying that he never made a Ritchie claim in state court, but he has now morphed into a Ritchie claim. A Ritchie claim requires a showing that the government, that the government possessed the mental health records and his state, his claim to the state courts, which is all the state courts had to decide the case on, was that this, he was entitled to these records solely on the basis of the letter, which called into question her mental health, and that he was entitled, that he had made, that he could have made the showing. I would like to also note, you know, when counsel says the attorney didn't even file a motion here, yes, that's very important. This is an ineffective assistance of counsel claim. This is not a matter where this court is deciding straight-up Ritchie claims that were filed in trial courts, in state courts, and decided as Ritchie claims, not in the context of ineffective assistance of counsel. He didn't file a motion. He, the state court said, it's not deficient performance or ineffective assistance of counsel, or, I'm sorry, I beg your pardon. It's not deficient performance or prejudicial because what he has just said to us is not enough to meet the standard of materiality. And in Ritchie itself, the standard is stated as information that probably would have changed the outcome of his trial. So even if we're talking about the Ritchie standard, which this court has said is the standard is the same, and judge the question about is there a distinction between Schiffer claims and Ritchie claims, it is true that the standard, the showing that a defendant must make, has been held to be that doesn't mean that both of those get you access to the same records. Ritchie said stuff that's in the state's control, any state agency, not just the prosecutor, spanned at Brady. And Schiffer, the Wisconsin court, said we'll take it a step further based on our own precedent. That's what Schiffer said. Based on our own precedent, we say that you get in-camera review even for privately held records. And that, per his, may I just finish, per his petition for review in the Wisconsin Supreme Court, the petitioner said my counsel was ineffective for getting, failing to move for the records that were available at Rogers Memorial Hospital. He never said that the state, nor has he ever said that there was even ineffective assistance of post-conviction counsel for failing to make this. It's all bootstrapped. Well, is it correct though that, now as I understand it, the Johnson case earlier this year modified Schiffer Green in that respect. Yes. But at the relevant time for Mr. Gay, offered a path to getting records that are in private custody. Correct, Your Honor. Okay. Now, if I recall correctly, the petitioner has argued that the state has belatedly raised this question about proof of private versus public control of the records. Could you address that please? The respondent stated that this claim was not cognizable because it dealt with a matter of state law. That is in our answer. Okay, well that, I mean that, but that was my earlier question to you and that really You're not talking, you're talking about in the state courts? I'm talking about in the federal court. Yes, sir. Did you make, draw the distinction between federal, between private and public control of the records he was seeking? Yes, we did. I believe it's in my brief in the statement of the case. In your brief to this court? In my brief to this court at page 13. Respondent filed an answer arguing the district court was, quote, precluded from reviewing this claim because the real claim at issue is whether the Court of Appeals properly resolved Rogers' claim about trial counsel's to file a Schifrin Green motion. Wait a second, where, I'm not seeing that on page 13. But I'm also looking at the wrong brief. Sorry. Okay, that explains that. Sorry. I'm, I see that this is not, when I say that we, because the real claim at issue is whether the Court of Appeals properly resolved his claim about counsel's failure to file a Schifrin Green motion because such a motion would have failed under state law, I do not say there because it was privately held. I have that elsewhere. That would have, where else do we find it? I'm sorry, in this court? Or do you mean in the district court? Well, I would mention only that the district court did not permit briefing on this. It decided this case on the petition and an answer, and in fact. It was a little premature, wasn't it? Because he extended the time for the petitioner to reply. He had extended the time and failed to allow the petitioner to do a reply brief and then issued a second order saying, I have now read the reply brief. But the respondent did not have the opportunity for full briefing on this. Was there anything from the state court that decided these records were either privately held or in state custody? That is, no, there is not. It was not ever raised. There was no post-conviction counsel ever say, these might be subject to Ritchie. We should develop that. And there is not in this habeas petition a claim that post-conviction counsel was ineffective for failing to pursue this as a Ritchie claim, which would bring it into federal court. The problem is that if this is, there's two ways to solve this case. One is the court, the district court said, look, the petitioner offered no reason that that information would have undermined her credibility. It's almost like a, if you're going to lose on this prong, you lose. I don't need to go into who had the records. Because whether they were held by a state agency, which has, there's no evidence in the record at all. In fact, there's contrary evidence in his own petition for review that he was seeking something from Rogers Memorial Hospital. But the district court said, you haven't made your showing. And I am certain that this would be very helpful for any defense counsel to have, but that's not the legal standard. He has to How does he do that without the records when he's only got what his investigators have told him in her letter? What he has to show is a likelihood that those records contain something that is relevant to a determination of guilt. There is, whatever it is, it's not merely saying she wrote a letter that said she has been hearing voices and I think that she is mentally ill. But it went beyond that. We've got the investigators report, right? Well, we don't have anything in the record. The, uh, we have, but we have a lawyer making that state, we have that test. Pardon me, counsel. I'm about to ask you a question. I think you were answering, but I think it helps if one of us speaks at a time. That there was a representation to the state trial court about what the investigators had reported about a schizophrenia diagnosis. Is that right? Yes, sir. Okay. Counsel, not in testimony, made a representation to the court that his investigator had spoken with the victim and her mother. Extraordinary. But I also noted in my brief that at sentencing, trial counsel walked back that statement in a, in a and there was a mention of schizophrenia, but it turned out to be post-traumatic stress disorder. So that was in, um, the, that's in the sentencing hearing of, in the state trial court. Yes, sir. Okay. I, um, that is at page eight of my brief to this court. He acknowledged that she was one of the few victims along with her mother who was actually given an interview to my investigator. They were very open and forthcoming. And he implied that an initial belief that it was schizophrenia had been ruled out. And then I quote in full what he did say there so that I'm not characterizing it for the court. She initially told my investigator that she was diagnosed with apparently a belief that it was schizophrenia, but later on said it was post-traumatic stress disorder. I don't know. We didn't get into psychological reports is because it is not open season on victims' medical records. You have to make a showing in order to get there. You don't get to simply say, I want those. There is a showing of materiality and there was no. Suppose you had a letter, um, indicating I've diagnosed, um, or suppose she said in the letter, the psychiatrist said I had schizophrenia, would that be enough? I beg your pardon, judge, my time is up. Please go ahead and answer the question. Um, if her letter said I have been diagnosed with schizophrenia, my answer would be that a diagnosis of schizophrenia would not necessarily indicate that she could, that the records that he seeks are likely to include material, information that is material to a determination of guilt. Do you think it would be relevant to her credibility that that diagnosis? That's not the standard, but I do think it would be relevant to her credibility. Yes, sir. Okay. And, but that would not be enough in a, he said, she said case that really understates the testimony and the record here. But, uh, the judge, the jury saw this victim testify extensively and I would say, can't diagnose and naturally they would be entitled to hear that she had a mental illness that might affect her credibility, correct? There was testimony that she had seen a psychiatrist and a psychologist elicited from her. And this fact was brought up repeatedly in closing and opening. And do you agree with opposing counsel about the limits that were imposed on that cross? Yes, because again, you have to make a foundation. Absolutely. The fact that that is not permitted does not mean that that's an injustice. Thank you, Ms. Bice. We'll now turn to Mr. Rayola for rebuttal argument. Thank you, Your Honor. Um, I've got a number of, of responses, but I'm going to try and keep them just some of the factual representations. I mean, we cite in our brief, um, all the facts that are relevant. So I'll let the court rest on those instead of going through them one by one. But I think it is important to emphasize that the state time and time again in the opening and the closing said, this is about who you believe more. They said it is a, he said, she said case. And we have the direct quote in the opening or the closing. They said, this is a very close case. This is a very difficult case. It's about who you believe more. And the standard is a plausible showing that the records might contain material and favorable evidence. If you look at the Browning decision in the 10th circuit and the Northern District of Oklahoma, they said a schizophrenia diagnosis meets that favorable to the accused because it can be used to impeach the credibility of the witness. And it is material. That is the type of mental health disorder that is material about, about a witness's credibility. So what do we do with the statement at sentencing? The statement at sentencing, your honor. Um, and I've got that in front of me. So the, the attorney says, and it's, it's not clear whether he had followed up with the witness or he's just relying on what the state had said. If we, if we go through this chronologically, he came forward and he said, I, my investigator said she had schizophrenia. Then the government said, well, we were told it was depression, but we have no proof. Um, you know, one way or another, you need to file a sheriff agreed motion at sentencing. The attorney comes forward and he says, quote, she initially told my investigator that she was diagnosed with apparently a belief that it was schizophrenia, but later on said it was post-traumatic stress disorder. I don't know. We didn't get into psychological reports. How could you not know? This was, this, this, this was your defense. And it's not clear to me if he had a separate conversation with the victim and the victim sat down and talked to him and said, look, we, we were wrong on that. We're just depressed. Don't you think we would know that if he had a separate conversation with the victim? Exactly, your honor. That is originating from the original discussion with the investigator. That is, that is originating from a throwaway statement from the government. And he's confirming, I don't know one way or another, cause I didn't look into it, which confirms that this was not a reasonable decision to give up on the Schriffer green motion. He didn't inform himself one way or another and just gave up on it. Um, to turn to just quickly to the question of whether they belong, whether they were in the possession of a public entity or a private entity, the state never raised that argument until their responsive brief. And I, I'm not even sure they would have raised that argument if we didn't indicate that Johnson had had changed the law. I think we invited them to make that argument because we wanted to be transparent to the court of that, that change in the law that occurred. There has been no fact finding on this at all. She could have been treated in multiple facilities. I don't know whether Rogers Memorial Hospital is a public facility or private facility. I looked up on Google. It looks like it's a private facility, but with continuity of care, if you're treated at any facility, your facility would have all of the records. I highly doubt that my opposing council went and spoke to every state agency and confirmed one way or another, whether this individual has never been treated by a state agency and they wouldn't have their records. So this is premature in our mind. And where I want to close is the remedy we're asking for is not a very, is, is not asking for a lot. My client is in jail and has a 40 year sentence and we're asking for an in-camera review. We're asking for a limited hearing where the trial court can look at the records. If the state wants to come in and say, you have to make your burden to show that they belong to, to, to the state, the state has possession of them, that she wasn't just treated at a private facility, that, that could be handled in a very quick evidentiary hearing before the district court. But I think it's inappropriate to ask this court to start finding facts that are outside the record that weren't presented until it was a, until a responsive brief on appeal. And I'd like to add that Mr. Rogers was proceeding pro se, so it's particularly egregious to ask for this fact finding to happen when, how would he know that this was a significant issue when he's trying to brief the issue pro se in the district court? Unless there are any further questions for the reasons set forth in our brief, we'd ask that this court reverse and remand the denial of Rogers' habeas petition for further proceedings to ascertain the appropriate remedy for counsel's deficient performance. Thank you. Thank you very much, Mr. Raiola, and you have the thanks of the court as does to you and your law firm. You've been court appointing counsel in this case. We greatly appreciate all your time, effort, and energy on this. Thank you. Thank you as well, Ms. Bice, for your presentation this morning. The case will be taken over.